Good morning. May it please the Court, I represent the appellant in this case, although for the reason I'm about to get into, we believe he really should be treated as the petitioner. The parties do agree that this matter should be reviewed as a petitioner's review, and that's in reliance upon two cases that we cite, Cortes and Alvarez-Barajas, and the enactment. But in this case, there's another fact which we think, I think, I don't know, the government hasn't disagreed with me, which makes this really a petition for review, and that is that Mr. Gonzales did file a petition for review, and it was dismissed because at the time the Court did not have jurisdiction, but the Real ID Act changed that. I don't know if the Court has any questions about the direct appeal versus petition for review issue. If it does, I'm happy to answer them. Otherwise, I'd like to proceed to what I consider to be really the central question, which is whether or not a temporary resident under Saw had a well-settled expectation under St. Cyr to apply for 212C relief. And in this case, there's no dispute about the facts that the appellant or petitioner was a temporary resident at the time he took his plea, that he subsequently adjusted to permanent residence, was placed into proceedings, filed for 212C relief under the authority of St. Cyr, the IJ pre-terminated, which is a word only used in immigration court, I believe, and in part because said you couldn't have a well-settled expectation because the statute did allow for revocation of the temporary residency. Also, some people urge the limitation of St. Cyr to the scenario where there's been a plea agreement and expressed quid pro quo. What's your response to that? Well, St. Cyr itself did not talk about reliance. St. Cyr assumed reliance. It simply said that if you qualified for 212C relief at the time of your plea, then notwithstanding the elimination of the relief on April 24, 1996, the alien could still apply. Why should it be limited to a plea agreement context? Well, it was limited. There was a plea agreement that this individual did plead guilty. This was not a trial. And I don't know of any authority that says that it only is limited to a written plea agreement that states that the plea is in reliance upon 212C. In fact, the leading case would obviously be St. Cyr. And then the question would be, does Mr. Gonzalez fall within St. Cyr? And we contend he does. He plead guilty. At the time, 212C was available. He, in fact, had discussions with his attorney, with an immigration officer and a probation officer, about the effect of it. But he wasn't entitled to anything at that time, was he? At that time, no, he was not entitled. And that's subsequently a body of law developed, which is now codified, which said that an alien continues to accrue the necessary time, the seven years of lawful residence and lawful domicile, after the commission of the offense. In other words, if the government does not act against the alien until they've accrued the time, then they are able to do so. So the answer is, no, he was not entitled to 212C relief at the time of the plea because he didn't meet the seven years requirement. However, the decisions of this Court, the Wall case, and now the newly codified regulation, which specifically addresses St. Cyr cases, say that he would be qualified. If the only issue was, did he accrue enough time, then he would qualify. What the IJ and the Board seem to be saying is, he couldn't accrue the time because he was a temporary resident and the statute, the SAW statute, allowed for revocation of a petition upon conviction of a felony. But as we've argued, that's not unique to SAW applicants. Every lawful permanent resident can face loss of their status for a number of reasons, both by simple administrative action of the district director or through the court process. There are statutes that allow for the revocation of petitions when marriages either are thought to be suspect after permanent residence is granted or when they simply terminate within a certain period of time. And there's that catch-all, Section 246, that allows for a revocation whenever it appears to have been improvidently granted. And, of course, any lawful permanent resident can be placed into removal or, at that time, deportation proceedings for a number of reasons. It didn't happen here. Mr. Malden — Mr. Gonzalez continued to accrue the time. Now, the — we have cited a couple of cases, and I don't want to go into the Mad Northern, but this Court has decided, first of all, that for purposes of travel and employment, a temporary resident has the same rights as a permanent resident. And it's important to note that 212C was related to travel. It applied to returning residents. It was the Court's finding that under equal protection, it had to apply to aliens already in the country. And Mr. Gonzalez was placed into proceedings as an arriving alien. He is the very person for whom 212C was initially enacted. Is Mr. — is Mr. Gonzalez — I mean, Mr. Gonzalez clearly has noticed as he — when he leaves the country, that when he comes back in, that 212C is not available. It's been done away with for years, right? Well, at the time that he was placed into proceedings, the United States Supreme Court had decided St. Cyr, and, therefore, to — Right. Okay. But we're talking 2003. O'Reira and — O'Reira was adopted in 1996. So for seven years, he knows that 212C relief has been eliminated completely. Actually — well, again, I believe St. Cyr did not require reliance, but assuming that reliance was to be a factor, let us assume what I would think is a fair thing to say. If he had have known the law, what would he have known? And in 2003, he would have known that as of 2000, since the St. Cyr decision, he could apply, at least under our analysis. Well, but he is not in the same category as the aliens in St. Cyr, is he? Well, he's in the same category to the extent that under the controlling law, he had accumulated seven years lawful permanent — Right. But in St. Cyr, you had people who were actually entering into plea agreements in reliance on a law in existence at that time, which was subsequently changed. Well, actually, as I've said, St. Cyr never actually specifically said they relied upon that law. It said they could have relied upon it. Right. It didn't make it a factor. But at the time that they pled, there was a law in existence which was subsequently changed, which altered their status. Same thing with Mr. Gonzalez. At the time he pled, 212C was clearly in effect, and 212C would have barred from admission into the United States an alien who had been convicted of a felony involving moral turpitude. He was even told that by his lawyer. So he clearly knew when he took the plea that there was a problem. But at the time, he wasn't deportable. If he didn't leave the country at that time, they couldn't place him into deportation proceedings. If he did leave the country, he would face the problem of inadmissibility. However, by the time he actually left the country and got put into proceedings, he had both accumulated the time, and notwithstanding the elimination of 212C by AEDPA on April 24, 1996, the U.S. Supreme Court had held that it was still available to certain aliens. And what we believe is that the central issue is, did his status as a temporary resident preclude him from having the same reliance that he would have had as a permanent resident? And we contend that the case law of this circuit supports his position that it did. For example, the courts have held that both the seven years lawful homicidal and the lawful residence commenced upon the filing of an application for amnesty, which is what he got, the special agricultural work. It was part of the legalization program, often called amnesty. He got that, and the statute now says that the time that he accrued since his plea counts towards that necessary time. So he never was the subject of a revocation proceeding. I'd also like to point out one other thing, that even if they have commenced revocation proceedings, it doesn't mean that he wouldn't have been allowed to stay. First of all, he would have been entitled to, you know, the same due process anybody would be entitled to in a revocation proceeding. Second, although the government points out that the revocation section of the law statute does not provide for any waivers, it also is silent on Section 212C, which is a waiver for inadmissibility when you have a moral perpetuity problem. So. But let me ask you this. Was your client eligible for 212 relief at the time of his conviction? No. Okay. Doesn't that then distinguish his circumstance from that in St. Cyr sufficiently so that St. Cyr does not apply? No, because in St. Cyr, they talked about being eligible for relief. And the terms of being eligible for relief has been the subject of tremendous litigation. As I said, this circuit and many other circuits, including the Second Circuit, held that you remained eligible in the sense that if you accumulated the seven years that you needed at the time of proceedings, if the government just didn't do anything to you, you were eligible. And that has now been part of it. St. Cyr, because I thought St. Cyr held that the Petitioners were eligible for relief at the time of the conviction. That's what St. Cyr said, Your Honor. That is correct. But subsequently, the definition of who is eligible under the St. Cyr holding was the subject of regulation. It went through the standard regulation procedure where notice was posted, the Attorney General gave their regulations, public comment was held, and the Attorney General concluded, and now that is the law, that for purposes of determining eligibility for 212C under St. Cyr, you have the requisite time if you accrued it after the conviction. We cite the regulation in our brief. Are there any cases that have made that incorporated the regulation interpretation that you advocate? I do not know of any cases since the regulation. I know of cases prior to the regulation. They're cited, the Wall case being the leading case. The regulation is a codification of the Wall case. Perhaps one reason why there isn't any case, or at least none that I know of, and I haven't heard of any from the government either, is because no one would seek to challenge that finding because the Attorney General is tasked in the first instance with responsibility for applying these laws, and the Attorney General did go through a process that is fair and is required, which includes notification from all segments of the community that would be interested in immigration law, and they concluded that the proper way to apply St. Cyr was to allow it to be available to aliens who were not eligible at the time of their conviction but became eligible later on. And I do not know of anyone who has challenged that application. Since it is the government that has determined that that is the proper way to proceed, it's unlikely that they would be appealing, and I certainly doubt there would be many aliens who benefit from that who would appeal. Are there decisions from the BIA that have incorporated that interpretation? None that I'm aware of. I'm aware of no precedent. I would only know of precedent decisions. They'd be the only ones that would count. I know of no precedent decisions of the BIA or any others that have said that St. Cyr relief, which is simply 212C relief, is not available to an alien who did not have the seven years at the time of their plea, and I do not believe the Board would make such a finding in light of the regulation. It's important to note that regulation. It's like a finding one way or the other. Either the person is eligible or the person is not eligible. I'm just asking you, are there any rulings one way or the other? I know of no administrative or judicial decisions that run contrary to the current regulation. That run consistently with the regulation as you interpret it. Have there been any rulings, consistent or inconsistent, with the rule? No rulings either way that I know of. And, therefore, we believe that the appropriate thing to do in this case is to remand this matter back to the Board to remand to the immigration judge for a finding as to the application for 212C. The immigration judge in this case, in our opinion, handled it the correct way by taking all the testimony and making the legal decision at the end. And, therefore, if there was a disagreement with his legal conclusion and the Board's ultimately legal conclusion, it wouldn't be necessary to remand it for testimony again. Because — Counselor, just so I understand your argument, what regulation are you referring to that you say incorporates eligibility for St. Cyr after the plea, once the time has continued to accrue? What regulation are you referring to? In my brief, Your Honor, if you give me a moment, I will find it. Maybe you can go to rebuttal, just so I'm specific as to what your argument is. But I think that if the government — I'll look for it definitely on rebuttal, but I think the government would agree that that is indisputably — Well, I just want to check for myself. No, no, I'll find it. And with that, Your Honor, I see I have a little over four minutes. I know Mr. Rolson, I'm sure he has many important things to say. I'd like to reserve my time for rebuttal. Thank you. Mr. Rolson? Good morning. Good morning, Mr. Court. Edward Olson from the U.S. Attorney's Office on behalf of the Respondent, Alberto Gonzalez. I'd like to briefly address the impact of the Real ID Act on this case, and then I'll address the merits of the petitioner's arguments. In light of the passage of the Real ID Act in this Court's decision in a case called Alvarez-Barajas, which deals with how this Court should approach cases, immigration habeas cases that are pending on appeal as of the date of the enactment of the Real ID Act, it appears that this Court should construe the appeal from the District Court's judgment as a petition for review. I'd like to say, however, that procedurally there are some distinctions between this case and Alvarez-Barajas, which suggests that perhaps the Court should not review the BIA's decision. And that is, in Alvarez-Barajas, the alien, like the alien in this case, his application for 212C relief was denied by the BIA. At that point, he properly filed a petition for writ of habeas corpus in District Court because he was barred from seeking review of the BIA's decision in the Court of Appeals in light of his criminal conviction. The District Court denied the habeas petition. The alien appealed. The Real ID Act had passed while the appeal was pending in this Court. Understandably said, although Congress has not specifically said what to do with cases that are pending on appeal as of the date of the enactment of the Real ID Act, we think it would make sense to review the case as a petition for review. This case, in distinction, when the BIA denied the alien's application for 212C relief, the alien did not file a petition for writ of habeas corpus in District Court as the alien should have under St. Cyr. Instead, what the alien did, despite the fact that the statute said that you can't seek review in the Court of Appeals if you have various criminal convictions, he filed a petition for review in this Court. Understandably, this Court issued an order to show cause, saying, why shouldn't we dismiss the appeal? You have a criminal conviction under 8 U.S.C. section 1252A2C. We don't have jurisdiction to review appeals filed by aliens with criminal offenses. In response to that, the alien filed a motion to voluntarily dismiss his appeal and ask that the appeal be transferred to the District Court where it should have been and construed as a petition for writ of habeas corpus. This Court granted that motion to transfer the case and then said specifically, we don't say, we don't decide now whether or not the District Court will have jurisdiction over the habeas petition. By the time the case had been transferred, and in fact, before the petition for review had been filed in this Court, the alien had been removed. So the District Court concluded it didn't have jurisdiction under this Court's decision in Miranda. A District Court doesn't have habeas jurisdiction if the habeas petition is filed after the alien had been removed. So, understandably, the District Court concluded we don't have jurisdiction. So I think, although generally, Alvarez-Barajas deals with how cases should be dealt with when the habeas petition is on appeal as of the date of enactment. Here, the petitioner would be getting review of something that he wouldn't have gotten if he had followed the appropriate procedures. So I think a strong argument can be made that this Court should dismiss the petition for review for failing to exhaust proper judicial remedies. I'll next address the merits, assuming this Court concludes under Alvarez-Barajas. It has jurisdiction to review the petition for review. I'd like to talk about the petitioner's arguments. The petitioner's... Do you agree with your opponent about this regulation that he cited in his brief? Is that what it shows? Yeah, I think the petitioner's summary of the regulation is correct, but I'll explain why it's really irrelevant in this case. In a nutshell, the petitioner's argument is that the B.I. erred by denying the 212C application because he pleaded no contest to committing a lewd and lascivious act on his 13-year-old daughter with the reasonable expectation that he'd be eligible for 212C relief if and when he was placed in removal proceedings. But this claim fails because he couldn't have had a reasonable expectation of 212C relief, and that's because at the time he pled no contest to the charge, he wasn't a lawful permanent resident, and 212C relief was only available to lawful permanent residents. So that leaves only his claim that, well, although I was a temporary resident at the time, I pled no contest to the plea, I had an expectation that I'd become a lawful permanent resident under the SAW provisions, the Special Agricultural Workers Program. But that... I thought his argument was a little more nuanced because he said the regulation that you agree, and I'm trying to pin down what regulation you all are agreeing, but the regulation allowed him to continue to accrue time to become a permanent resident. So because the regulation allowed him to continue to accrue time, then he was eligible because he became a permanent resident sometime along that continuum. So would you respond to that? My response to that is that the government doesn't dispute that for purposes of calculating whether or not an alien has established the seven years of lawful domicile in the United States, that this court has said that you can include the portion of time that you were a temporary resident. Right. So we don't dispute that the time would have continued to tick up until the removal proceeding. The government's argument is that's really a red herring. It's irrelevant because that's not why the immigration judge, or the BIA in this case, denied his application for 12c relief. It had nothing to do with how long he had been here or how long he would be here. It goes back to St. Cyr, which is at the time you entered your plea, did you have a reasonable expectation that you'd be eligible for this relief? And why wouldn't he have a reasonable expectation if the time continues to accrue? Because the IJ, in our view, properly determined that he was only a temporary resident. And if between the time you're a temporary resident and when you would adjust to a lawful permanent resident, you commit a crime, the Attorney General can deny your application, can deny your temporary resident status, and deny your application to become a permanent resident. So the alien is on notice that, wow, I've committed this horrible crime. It's really not reasonable for me to assume that I'm going to adjust my status to lawful permanent resident because the Attorney General can deny my application for permanent residence based on this criminal conviction. His argument, as I understand it, is that you let the time go by. Now he's a lawful permanent resident, so therefore he has the expectation that nothing's going to happen and it kind of relates back to the earlier time of when he entered a plea of guilty. I understand that, Your Honor. And the appropriate time of inquiry is when you enter your plea. So it may be that he actually did become a lawful permanent resident under the SAW provisions. But that doesn't mean that at the time he entered his plea, he had a reasonable expectation that would happen. In fact, he should have had the reasonable expectation that wouldn't have happened in light of this horrible crime that he committed because the Attorney General has the authority to say to someone who's a temporary resident, if you commit a felony or you commit three misdemeanors in the United States, after you become a temporary resident, I can say you're not going to adjust your status to a lawful permanent resident. But the Attorney General didn't do it in this case. The Attorney General didn't do it. It's unclear why the Attorney General didn't do that. That's not in the record. There are some cases in the Ninth Circuit which talk about the sheer number of participants in the SAW program and the limited period of time that the Attorney General has to investigate all the applicants in the SAW program. It could have been negligence. Who knows? But the fact that he actually did adjust his status, that no one caught the fact that, wow, this guy has committed a really bad crime, he shouldn't become a lawful permanent resident. The fact that that didn't happen, I don't think it stops the government from saying now that at the time he entered his plea, he didn't have a reasonable expectation that he would become a permanent resident. So he may have had a reasonable expectation that the time would continue to tick in terms of establishing the seven-year lawful domicile requirement, but that's different than saying at the time he entered his plea, he had a reasonable expectation that he would actually become a lawful permanent resident despite this crime that he had committed. Counsel, in your view, does St. Cyr's explicitly say that the pertinent time for determining the reasonable expectation is when the plea is entered? Because opposing counsel takes issue with that. Yeah. St. Cyr's clear that the appropriate time that you look at the reasonable expectation is that when you enter the plea. Because in that case, the court said it's reasonable to assume that in deciding whether or not to accept a plea, you've talked about the immigration consequences with your attorney. And it's reasonable to assume that one of the immigration consequences is whether or not you'll be eligible for 212C relief down the line. In that case, unlike this case, there was no reason for an alien to assume he wouldn't be eligible for 212C relief. Here, there's an obvious reason why the alien wouldn't think he'd be eligible for 212C relief, because he just committed this bad crime, and in the statute, the SAW provision, it gives the attorney general the discretion to, A, revoke your temporary resident status, and, B, not allow you to transition to the lawful permanent resident status. So in a brief follow-up to that, I think one of the petitioner's arguments is that, well, is that any different than a lawful permanent resident? You know, there are some provisions in the statutes which allow the attorney general to revoke lawful permanent resident status. So is that any different than what this guy was facing? Well, it's different in a very significant way, and that's because the rescission provisions in the statutes allow the attorney general to revoke lawful permanent resident status when the status was improperly given in the first place. But that's different than what happened here. What happened here is that there was a criminal conviction in between when the application was filed and when the person was going to transition to lawful permanent resident status. So I think that's a very important distinction. So the person in this case is much different than a person in St. Cyr, for example, who's a lawful permanent resident and has no reason to believe that in the future he won't be eligible for 212C relief. If the Court doesn't have any follow-up questions, I can present. Thank you, Counsel. First, I wanted to make one thing clear about what the Court referred to that I took issue with when the state of mind is relevant. I agree that the state of mind is relevant at the time of the plea. I think what I said, and perhaps it wasn't clear enough, was that St. Cyr assumed reliance. It did not make any factual findings in that case that the aliens relied on anything. It just accepted the fact that the relief was available. That's reasonable, though, for the Court to do that, because the aliens at that time are expecting everybody else to know what the law is and to know what their remedies are. Correct. And in this case, there was testimony by the petitioner, which was not found incredible. It was actually accepted as credible that he had three discussions with his attorney, with a probation officer, and with an immigration officer who interviewed him in custody. And they told him that as long as he didn't leave the country, he wouldn't have a problem, because at that point, it wasn't a deportable offense. It became deportable. And that was correct. So he was put on notice. So certainly, there's actually more evidence regarding this petitioner's knowledge and reliance than there was in the case of St. Cyr, because assuming, and again, we're engaging in it. I understand you correctly. His counsel told him that as long as he didn't leave the country, that he was okay. And that's exactly the problem here, of course, is that he did leave the country. Correct. What I'm saying was he was aware at the time of his plea what problems he faced. And the state of the law was such that if he managed to avoid any confrontation with the government for seven years, he'd be eligible for 212C relief. One of the reasons I suspect that the Supreme Court didn't engage in a detailed factual analysis of reliance in St. Cyr is it's almost impossible to fully construct what attorneys and clients discussed 10, 15, 20 years before. And that's why they simply left it as if you qualified under the law. Now, the regulation that we keep talking about was a regulation that was promulgated by the Department of Justice on September 28, 2004, specifically addressing motions to reopen under St. Cyr, well, applications for 212C relief under St. Cyr. And it was Section H that talked about the accrual of time. Do you have a citation, counsel? No, I do not. I could probably get it to the court very quickly. I'm sure I have it somewhere in my office. We generally carried it around for quite a while when we went to immigration court until everyone became familiar with it. I thought it was in your brief, but that was a mistake. No, it's referenced at page 18. We talk about that. We say that the holding of Wall and Ferugi was incorporated into that regulation that was proposed. Don't cite the CFR. No, I do not. And I should have, but I can provide the court with that or a copy of the regulations themselves if the court wishes. The other thing I'd like to talk about is that the government, in their brief, said this should be reviewed as a petition for review. They seem to have steered away from that now, but I don't think that their analysis is correct because the intent of Congress, which is stated in the Alvarez-Barajas case, was that the Real ID Act would apply to any final administrative decision at the time of its enactment. The board made its decision on September 2, 2004, and Real ID was enacted May 11, 2005. There was a petition for review filed, and it was noted in some of the pleadings that the issue there was not was he a convicted criminal. The issue was did St. Cyr apply to him. So when you, and I think as the court knows, the issue of jurisdiction on criminal matters is a very complex area, and there are repeatedly cases that distinguish between determining do you have jurisdiction to determine your own jurisdiction. You can determine whether or not a particular case was an aggravated felony. In this case, the court did not at the time believe that this was a matter that came outside of the prohibition on reviewing certain appeals by criminal aliens. However, it was filed, and under the Real ID Act, it would appear that it should be treated as a petition for review. In addition, there were some important issues raised in the habeas as to why he wasn't in the country, and we don't have to go into them in great detail because I don't believe that it should be treated as a habeas, but there is a problem when aliens are housed very far from their council and then move suddenly to another location. A habeas requires pretty detailed contact with your client. They either have to sign off on it or authorize you to sign off on it. Counsel, I think we're aware of that. Your time has expired. Is there? No, thank you. Thank you. Thank you, Mr. Shakin.
judges: Siler , Rawlinson, Bybee